## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WELLS FARGO BANK, N.A.,        :
as Trustees for the registered    :
Holders of the GE Business Loan  :
Trust Certificates, Series 2005-2,   :
                                  :
             **Plaintiff,**      :    **3:14-CV-56**
    **v.**                          :    **(JUDGE MARIANI)**
                                  :
**PREMIER HOTELS GROUP, LLC,**    :
                                  :
            **Defendant.**     :

## MEMORANDUM OPINION

### I. INTRODUCTION

This commercial mortgage foreclosure action involves real and personal property

located at 200 Tigue Street in Dunmore, Pennsylvania, commonly known as Scranton East

Hotel and Convention Center ("Hotel"). (Doc. 1 at ¶ 1). Before the Court are motions to

appoint a receiver (Doc. 7) and for summary judgment (Doc. 19) filed by Plaintiff Wells

Fargo Bank, N.A., as trustee for the registered holders of the GE Business Loan Trust

Certificates, Series 2005-2 ("Wells Fargo" or "Trustee"). Wells Fargo argues that Defendant

Premier Hotels Group, LLC ("Premier") defaulted on its mortgage by, *inter alia*, failing to pay

its real estate taxes. Premier denies being delinquent in its taxes and defaulting on the

mortgage. Additionally, Premier argues that this Court lacks subject-matter jurisdiction and

that Wells Fargo is not a real party in interest under Fed. R. Civ. P. 17. For the reasons set

forth below, Wells Fargo's motions to appoint a receiver and for summary judgment will be denied.

## II. FACTS RELEVANT TO THE JURISDICTIONAL ANALYSIS

Premier is a Pennsylvania limited liability company. (Pl.'s Statement of Facts ("PSOF"), Doc. 19-3, at ¶ 3). All of its members are citizens of either Pennsylvania or New Jersey. (*Id.* at ¶¶ 5-7). None of its members are citizens of South Dakota. (*Id.* at ¶ 4). The mortgage at issue in this foreclosure action is an asset held by Wells Fargo, a national banking association whose main office is in Sioux Falls, South Dakota. (*Id.* at ¶¶ 1-2).

Wells Fargo filed the Complaint "not in its individual capacity but solely as trustee for the registered holders of the GE Business Loan Trust Certificates, Series 2005-2[.]" (Doc. 1 at 1). The trust at issue was governed by a pooling and servicing agreement ("PSA"), dated October 28, 2005. (Doc. 22-2, Ex. A). The parties to the PSA included Business Loan Trust Funding, LLC ("BLTF"), as Depositor; GE, as Master Servicer; and Wells Fargo, as Trustee. (*Id.* at 1). The purpose of the PSA was for BLTF to transfer certain commercial mortgages it had purchased into the "Trust Fund . . . in exchange for mortgage pass-through certificates" to be sold to investors. (*Id.*). Section 2.01 of the PSA, titled "Establishment of the GE Business Loan Trust 2005-2; Conveyance of Mortgage Loans," provided, in pertinent part:

> (a)     The Depositor does hereby create and establish, pursuant to the laws of the State of New York and this Agreement, the Trust, which, for convenience, shall be known as "GE Business Loan Trust 2005-2". The Trustee is hereby authorized and directed, both in its capacity as the Trustee and on behalf and for the benefit of the Trust, to execute and deliver that certain novation agreement pursuant to which the Depositor shall transfer all

2

of its rights, interests and title in and under the Interest Rate Swap Agreement to the Trust and the Trustee hereby agrees to perform obligations as described herein with respect to the Interest Rate Swap Agreement.

(b)   The Depositor, concurrently with the execution and delivery hereof, does hereby assign, transfer, sell and otherwise convey to the Trustee for the benefit of the Certificateholders, without recourse, all the right, title and interest of the Depositor in, to and under the Mortgage Loans (including any security interest therein for the benefit of the Depositor), and all other assets included in the definition of "Trust Fund" or to be included in the Trust Fund pursuant to the terms hereof for the benefit of the Certificateholders. Such assignment shall include all scheduled payments of principal due on the Mortgage Loans on or after the Cut-off Date, and all scheduled payments of interest due on the Mortgage Loans on or after the opening of business on December 1, 2005. The transfer of the Mortgage Loans and related property accomplished hereby is unconditional and absolute and, notwithstanding Section 11.07, is intended by the parties to constitute a sale.

(*Id.* at 42).

Section 2.02(a) stated, "The Trustee declares that it holds or shall hold such assets included in the Trust Fund, in trust for the exclusive use and benefit of all present and future Certificateholders." (*Id.* at 46).

In addition to creating a trust in which the mortgages were held, the PSA established procedures for servicing and administering the trust. (*Id.* at Articles III & IV, pp. 51-81). Under the PSA, GE, as Master Servicer, was obligated to "diligently service and administer each Mortgage Loan . . . on behalf of the Trust and in the best interests of and for the benefit of the Certificateholders[.]" (*Id.* at 63). The PSA provided that GE "shall proceed diligently to collect all payments called for under the terms and provisions of such Mortgage

3

Loans[.]" (*Id.* at 67). GE would then remit the funds collected to the Trustee (*id.* at 70) to be distributed to the trust beneficiaries (the Certificateholders). (*Id.* at 83-88).

### III. FACTS RELEVANT TO THE MERITS OF THE PARTIES' DISPUTE

#### A. Undisputed Facts

On September 26, 2005, Premier attained a $4.4 million loan from General Electric Capital Corporation ("GE") that was memorialized by a promissory note ("Note"). (PSOF at ¶ 9; Ex. 1 of Compl., Doc. 1-1). The Note was secured by a mortgage ("Mortgage"), recorded on September 29, 2005, which granted a security interest in the Hotel's real property and certain personal property.[1] (Ex. 2 of Compl. at 1, 10). The Mortgage stated that Premier "shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property." (*Id.* at 3). "Grantor [defined as Premier] shall maintain the Property free of any liens having priority over or equal to the interest of Lender [defined as GE, its successors and assigns] under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph." (*Id.* at 3, 10).

The Right to Contest paragraph provided,

---

[1] To protect its interest in the personal property, GE filed a UCC Financing Statement with the Pennsylvania Department of State on September 28, 2005. (PSOF at ¶ 15; Ex. 3 of Compl.). On May 18, 2010, GE amended the Financing Statement. (PSOF at ¶ 16; Ex. 4 of Compl.).

4

> Grantor may withhold payment of any tax, assessment or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien.

(*Id*. at 3).

The Mortgage did not define "good faith dispute." (*See id*. at 9-10).

With regard to default, the Mortgage listed several events that would constitute

default, including "**Default on Other Payments**. Failure of Grantor within the time required

by this Mortgage to make any payment for taxes or insurance, or any other payment

necessary to prevent filing of or to effect discharge of any lien." (*Id*. at 6). In the event of a

default, the Mortgage provided:

> If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Mortgage within the preceding twelve (12) months, it may be cured if Grantor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

(*Id*. at 6-7).

Under "Rights and Remedies on Default," the Mortgage granted the lender several

remedies in the event of default. (*Id*. at 7-8). These remedies included:

**Accelerate Indebtedness.** Lender shall have the right at its option, after giving such notices as required by applicable law, to declare the entire Indebtedness immediately due and payable. . . .

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

(*Id.* at 7).

On June 14, 2012, GE assigned the Mortgage to Trustee (PSOF at ¶ 21; Ex. 5 of Compl.) and executed an allonge to the Note stating that further payment on the Note was to be made to the order of Wells Fargo pursuant to the PSA. (PSOF at ¶ 20; Ex. 1 of Compl.). The Assignment was recorded on June 27, 2012. (PSOF at ¶ 22; Ex. 5 of Compl.).[2] On July 19, 2012, GE sent Premier a letter notifying it of the Assignment. (PSOF at ¶ 24; Ex. B to PSOF, Doc. 19-3).

On October 29, 2013, Wells Fargo, through its counsel, sent Premier a letter stating,

Real estate taxes with respect to the property securing the Note (in the approximate amount of $167,671) are delinquent. The Lender has asked us to notify you that the failure to pay real estate taxes constitutes an Event of Default (as defined in the Note).

---

[2] GE also filed an amended UCC Financing Statement on July 13, 2012 indicating that the Financing Statement had been assigned to Wells Fargo. (PSOF at ¶ 23; Ex. 6 of Compl.).

6

Please cure such Event of Default by providing written evidence to Lender within the next fifteen (15) days that all delinquent real estate taxes have been paid.

(Ex. 7 of Compl.).

On December 4, 2013, Wells Fargo sent Premier a letter stating that it was accelerating the Note since Premier had not made its November 2013 payment under the Note and since there remained unpaid property taxes. (Ex. 8 of Compl.). The letter stated:

The failure to pay such amounts constitutes Events of Default (as defined in the Note and in the Mortgage). Accordingly, lender exercises its right to accelerate the Note and hereby declares all sums due pursuant to the Note and other loan documents to be immediately due and payable. For and after the date hereof, the Note and all sums pursuant to the loan documents shall bear interest at the default rate of interest specified in the Note.

(*Id.*).

On July 17, 2014, Premier paid $31,520.35 to the Lackawanna County Tax Claim Bureau for the 2012 tax year. (Ex. D of PSOF). Premier's tax claim receipt indicated that it continued to owe $175,951.79 for the 2013 tax year. (*Id.*).

## B. Disputed Facts

The primary fact in dispute in this matter is whether Premier defaulted on the Mortgage. Wells Fargo argues that Premier defaulted by failing to pay its real estate taxes and failing to make its November 2013 payment under the Note.[3] (PSOF at ¶¶ 26-37).

---

[3] Wells Fargo also argues that Premier violated the Mortgage by failing to inform it of the alleged tax delinquency. (19-1 at 9 n.2). Under a provision entitled "Evidence of Payment," the Mortgage stated, "Grantor shall *upon demand* furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property." (Ex. 2 to Compl. at 3 (emphasis

Premier responds that its ongoing tax debt does not constitute default since it has disputed the amount of real estate taxes owed and has entered into a repayment plan with the Lackawanna County Tax Claim Bureau. (Def.'s Statement of Facts ("DSOF"), Doc. 21-3, at ¶ 35). Regarding the November 2013 Note payment, Premier asserts that it attempted to make the payment, but Wells Fargo's Asset Manager Mark Farr ("Farr") refused to accept it. (*Id.* at ¶ 33).

## IV. STANDARDS OF REVIEW

### A. Motion for Summary Judgment

Through summary adjudication, the court may dispose of those claims that do not present a "genuine issue as to any material fact." Fed. R. Civ. P. 56(a). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Turner v. Schering-Plough Corp.,* 901 F.2d 335, 340 (3d Cir.1990). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106

---

added)). However, Trustee does not assert that it made a demand for evidence of payment prior to the alleged delinquency.

S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912, 113 S. Ct. 1262, 122 L. Ed. 2d 659 (1993).

### B. Motion to Appoint Receiver

Fed. R. Civ. P. 66 provides that the Federal Rules "govern an action in which the appointment of a receiver is sought[.]" "In diversity suits, federal law governs the issue of whether a receiver should be appointed." *Wells Fargo Bank, N.A. v. CCC Atl., LLC,* 905 F. Supp. 2d 604, 610 (D.N.J. 2012) (collecting cases). District courts have "'broad discretion in appointing a receiver . . . [and] may consider a host of relevant factors[.]'" *Id.* at 614 (quoting *Canada Life Assurance Co. v. Alfred R. LaPeter,* 563 F.3d 837, 845 (9th Cir. 2009)). "[N]o one factor is dispositive." *Id.*

### V. ANALYSIS

### A. Jurisdiction and Rule 17(a)

As threshold issues, the Court must determine whether there is subject-matter jurisdiction for Wells Fargo's foreclosure action and whether Trustee is a real party in

interest under Fed. R. Civ. P. 17(a). Premier maintains that the Complaint fails to allege sufficient facts to determine the nature of the trust relationship between Wells Fargo and the trust beneficiaries. (Doc. 9 at 3 n.1). According to Premier, this lack of specificity precludes a proper analysis of these issues, creates genuine issues of material fact, and requires the Court to deny Wells Fargo's motion for summary judgment. (Doc. 21 at 9).

1. *Diversity Jurisdiction*

The Complaint alleges diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Doc. 1 at ¶ 4). Under § 1332, a plaintiff must establish complete diversity of citizenship. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373, 98 S. Ct. 2396, 2402, 57 L. Ed. 2d 274 (1978). "Complete diversity requires that, in cases with multiple plaintiffs or multiple defendants, no plaintiff be a citizen of the same state as any defendant." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010). "[T]he citizenship of an LLC is determined by the citizenship of each of its members." *Id.* at 418. The citizenship of a national banking association is determined by the location of the bank's main office as designated in its articles of association. *CCC Atlantic*, 905 F. Supp. 2d at 611 n.9 (citing *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 307, 126 S. Ct. 941, 163 L. Ed. 2d 797 (2006)).

The jurisdictional issue presented here is whether the Court should look to the state of citizenship of the named Plaintiff, Wells Fargo (South Dakota), or the states of citizenship of the many trust beneficiaries. *See CCC Atlantic*, 905 F. Supp. 2d at 611. If it is the former, then there is complete diversity between the parties since the members of Premier are

10

citizens of Pennsylvania and New Jersey. If it is the latter, then, according to Premier, Wells

Fargo has not established that complete diversity exists.

The Supreme Court has "held that the citizenship of an 'active trustee' of an 'express

trust' is determined by the trustee's state of citizenship, not the beneficial owners' states of

citizenship." *Id.* (quoting *Navarro Savings Association v. Lee, Jr.*, 446 U.S. 458, 462, 465,

100 S. Ct. 1779, 64 L. Ed. 2d 425 (1980)). *See also Emerald Investors Trust v. Gaunt

Parsippany Partners, et. al*, 492 F.3d 192, 200-01 (3d Cir. 2007) ("In a suit by . . . the

individual trustees of a trust, where the trustees 'possess certain customary powers to hold,

manage, and dispose of assets,' their citizenship, and not that of trust beneficiaries, is

controlling for diversity of citizenship purposes.") (quoting *Navarro*, 446 U.S. at 464-66).

Here, Premier does not argue that Wells Fargo is a "naked trustee" who acts as a

"mere conduit" for remedies flowing to others. *See Navarro*, 446 U.S. at 465 (quoting

*McNutt v. Bland*, 43 U.S. 9, 13-14, 11 L. Ed. 159 (1844)). Instead, it contends that the

Complaint does not include enough information about Wells Fargo's trust relationship to tell

whether it is an active trustee of an express trust. (Doc. 21 at 9). However, this argument is

belied by the terms of the PSA.

Section 2.01(a) of the PSA expressly creates a trust. (Doc. 22-2, Ex. A, at 42).

Pursuant to Section 2.01(b), "all the right, title and interest of the Depositor in, to and under

the Mortgage Loans" were "convey[ed] to the Trustee for the benefit of the Certificate-

holders, without recourse[.]" (*Id.*). Section 2.02(a) states, "The Trustee declares that it holds

11

or shall hold such assets included in the Trust Fund, in trust for the exclusive use and benefit of all present and future Certificateholders." (*Id.* at 46). The PSA further required payments under the Mortgage Loans to be remitted to Trustee (*id.* at 70) for distribution to the trust beneficiaries (the Certificateholders). (*Id.* at 83-88).

Thus, the PSA makes clear that Wells Fargo is an active trustee of an express trust since it possesses "the customary powers to hold, manage, and dispose of assets for the benefit of others." *See Navarro*, 446 U.S. at 464. Therefore, it is Wells Fargo's citizenship that is relevant for diversity purposes, and diversity jurisdiction has been established. *See id.* at 464-66; *Emerald Investors*, 492 F.3d at 200-01; *U.S. Bank Nat. Ass'n v. DRG Crums Mill RI, LLC*, 2013 WL 4500655, at *5 (M.D. Pa. 2013) (involving comparable PSA language, finding that the PSA created an express trust, and holding that the trustee-bank's citizenship was controlling for diversity purposes).

### 2. *Rule 17(a)*

Fed. R. Civ. P. 17(a)(1) provides, "An action must be prosecuted in the name of the real party in interest." "This rule ensures that under the 'governing substantive law, the plaintiffs are entitled to enforce the claim at issue.'" *U.S. Bank Nat'l Ass'n v. La Mar Gunn*, -- F. Supp. 2d ----, 2014 WL 1247085, at *3 (D. Del. 2014) (quoting *Feriozzi Co., Inc. v. Ashworks, Inc.*, 130 Fed. App'x 535, 539 (3d Cir. 2005)). Fed. R. Civ. P. 17(a)(1)(E) permits "a trustee of an express trust" to sue in its own name "without joining the person for whose benefit the action is brought[.]"

12

In determining whether an express trust exists, courts look to the language of the agreement that allegedly gave rise to the express trust. *CCC Atlantic*, 905 F. Supp. 2d at 611-12 & n. 13 ("Usually, a trust comes into existence upon the transfer of property . . . to another, as trustee. . . . In the case of an *inter vivos* transfer in trust [as opposed to a trust created by will], the transferor is the creator and the terms of the trust ordinarily appear in the instrument of transfer. . . . Alternatively, they may appear in an instrument executed by the Trustee, acknowledging receipt of the property and that he or she holds it in trust.") (quoting 1 Austin Wakeman Scott, William Franklin Fratcher, & Mark L. Ascher, *Scott and Ascher on Trusts*, § 3.1 (5th ed. 2006)); *La Mar Gunn*, -- F.Supp.2d ---, 2014 WL 1247085, at *3; *DRG Crums Mill*, 2013 WL 4500655, at *3. As stated above, the PSA makes clear that Wells Fargo is a trustee of an express trust. The PSA created an express trust and "all the right, title and interest" to the Mortgage Loans in the trust were "convey[ed] to the Trustee for the benefit of the Certificate-holders, without recourse[.]" (Doc. 22-2, Ex. A, at 42).

Thus, Wells Fargo is a real party in interest under Fed. R. Civ. P. 17(a)(1)(E).

### B. Motion for Summary Judgment

"The holder of a mortgage has the right, upon default, to bring a foreclosure action." *Bank of Am., N.A. v. Gibson*, 102 A.3d 462, 464 (Pa. Super. 2014) (citing *Cunningham v. McWilliams*, 714 A.2d 1054, 1056-57 (Pa. Super. 1998)). "The holder of a mortgage is entitled to summary judgment if the mortgagor admits that the mortgage is in default, the mortgagor has failed to pay on the obligation, and the recorded mortgage is in the specified

13

amount." *Id*. at 465. Here, Premier does not admit default. It cites the declarations of Umesh Matta ("Matta") and Attorney Richard A. Fanucci ("Fanucci") for support. (Docs. 21-1 & 22-2). Matta is Premier's General Manager and is responsible for the day-to-day operations of the Hotel (Matta Decl., Doc. 21-1, at ¶¶ 1-2). Fanucci has acted as Premier's corporate counsel and has represented Premier in its tax dispute with the County. (Fanucci Decl., Doc. 21-2, at ¶¶ 3, 8).

First, Premier disputes Trustee's assertion that it failed to proffer its November 2013 payment under the Note. (DSOF at ¶¶ 33-34). Matta maintains that Premier "attempted to make payments on several occasions including in November 2013 and March 2014." (Matta Decl. at ¶ 14). However, Farr allegedly refused to accept payment after October 2013. (*Id*. at ¶¶ 14-15; Matta Dep., Doc. 19-3, Ex. A to PSOF, at 31:3-32:15).

Second, Premier contests Trustee's contention that it defaulted on the Mortgage due to tax delinquency. (DSOF at ¶¶ 26-32). According to Premier, it disputed the real estate taxes assessed by the Tax Claim Bureau and entered into a repayment plan with Lackawanna County. (*Id*. at ¶ 35). In support of this claim, Matta maintains that Premier has been in "constant contact" with the Lackawanna County Tax Claim Bureau, through its counsel, to dispute and settle its real estate tax debt. (Matta Decl. at ¶¶ 17-18). Fanucci avers that he has communicated with the Bureau's Deputy Director, Ronald Koldjeski, on several occasions and has negotiated a periodic repayment plan. (Fanucci Decl. at ¶¶ 7-

14). According to Fanucci, Premier has satisfied its obligations under the repayment plan and that, as a result, the property has never been scheduled for tax sale. (*Id*. at ¶¶ 13-14).

Having determined that a dispute of fact exists regarding Premier's outstanding tax obligations, the question becomes whether the dispute is material. To answer this question, the Court turns to the language of the Mortgage. Under the Mortgage, Premier was obliged to "pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property." (Ex. 2 of Compl. at 3). Although the Mortgage required Premier to "maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage," the Mortgage granted an express exception for a "lien of taxes and assessments not due as further specified in the Right to Contest paragraph." (*Id*.). Under the Right to Contest paragraph, the Mortgage stated, "Grantor [defined as Premier] may withhold payment of any tax, assessment or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized." (*Id*.).

In light of this language, Premier's assertion that it disputed the Tax Claim Bureau's real estate tax assessment and subsequently entered into a repayment plan with the County creates a genuine issue of material fact as to whether Premier defaulted on the Mortgage. If Premier can prove at trial that its dispute with the Tax Claim Bureau was in "good faith," a

15

term the Mortgage does not define, and did not jeopardize Wells Fargo's interest in the property, then Premier may be able to establish that it did not default under the Mortgage. As the record currently stands, the Court cannot find, as a matter of law, that Premier's dispute with the Tax Claim Bureau was in bad faith or that it jeopardized Wells Fargo's interest in the property. Premier argues that its ongoing tax obligation has not jeopardized Wells Fargo's security interest since it has made timely payments pursuant to the alleged repayment plan and since the Hotel has never been designated for tax sale.

In response, Trustee asserts that in order to invoke the Right to Contest provision of the Mortgage and to establish that its taxes were subject to a good faith dispute, Premier was required to pay its real estate taxes under protest and file an administrative appeal with Lackawanna County. (Doc. 22 at 6-7). Since Premier has not produced evidence of a pending appeal, Wells Fargo argues Premier cannot rely on the Mortgage's Right to Contest provision. (Id.). The Court cannot grant Trustee the entry of summary judgment on this basis, since Wells Fargo's argument lacks a foundation in the Mortgage. The Mortgage does not define what constitutes a good faith dispute and does not specify what is required to invoke the Right to Contest provision.

In sum, genuine issues of material fact exist as to whether Premier defaulted under the Mortgage or the Note. Thus, the Court will deny Wells Fargo's motion for summary judgment.

## C. Motion to Appoint Receiver

The Court's finding that genuine issues of material fact exist regarding Premier's alleged default affects the Court's analysis of Wells Fargo's motion to appoint a receiver. Trustee's motion mainly relies on the provision of the Mortgage which permits the appointment of a receiver as a remedy for default. (Doc. 7-3 at 7-10).[4] Although this clause would militate in Trustee's favor if there was an undisputed default, Wells Fargo's reliance on this language is misplaced for at least two reasons. First, Trustee's contractual right to appoint a receiver is triggered by an event of a default, and, as stated, it is disputed whether Premier defaulted. Second, the presence of a mortgage provision granting Wells Fargo the right to appoint a receiver is just one of many factors the Court must consider in weighing the motion.

In determining whether to appoint a receiver in the context of a mortgage foreclosure action, several factors guide the Court's analysis, including whether:

> [1] the property is inadequate security for the loan; [2] the mortgage contract contains a clause granting the mortgagee the right to a receiver; [3] the continued default of the mortgagor; [4] the probability that foreclosure will be delayed in the future; [5] the unstable financial status of the mortgagor; and [6] the misuse of project funds by the mortgagor.

See CCC Atlantic, 905 F. Supp. 2d at 614 (internal quotation marks and brackets omitted).

---

[4] Wells Fargo also argues that Premier is "apparently insolvent" given its ongoing tax debt. (Doc. 7-3 at 11-14). In response, Matta maintains that "Premier Hotels is a solvent, financially strong company[.]" (Matta Decl. at ¶ 5). Neither party substantiates its assertions regarding Premier's financial status. In the absence of such evidence, the Court cannot appoint a receiver on this basis.

17

"When the moving party seeks a receiver who will not only collect rents and profits, but will also manage and operate the mortgaged property pending foreclosure, federal courts are particularly cautious in appointing a receiver[.]" *Id.* (citing *Canada Life Assurance*, 563 F.3d at 845). In this circumstance, courts "consider whether the evidence demonstrates something more than just the doubtful financial standing of the defendant and the inadequacy of the security." *Id.* (internal quotation marks omitted). In assessing whether to appoint a receiver to manage a property, courts consider additional factors, such as:

> [1] the danger of waste; [2] delays in foreclosure; [3] the defendant's fraudulent conduct; [4] imminent danger that property will be lost, concealed, injured, diminished in value, or squandered; [5] the inadequacy of the available legal remedies; [6] the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; [7] and the plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property.

*Id.* at 614-615 (internal quotation marks, brackets, and citation omitted) (quoting *Canada Life Assurance*, 563 F.3d at 845; *Chase Manhattan Bank, N.A. v. Turabo Shopping Ctr., Inc.*, 683 F.2d 25, 26-27 (1st Cir. 1982)).

Here, Wells Fargo requests that the Court appoint William W. Wolfe ("Wolfe") as receiver to manage Premier's property. (Doc. 7-3 at 15). Because Trustee seeks to have Wolfe "not only collect rents and profits" but also "manage and operate the mortgaged property pending foreclosure," the Court must be "particularly cautious" in considering Wells Fargo's request. *See CCC Atlantic*, 905 F. Supp. 2d at 614. Trustee must show "something

18

more than just the doubtful financial standing of the defendant and the inadequacy of the security." *See id.* (internal quotation marks omitted). Wells Fargo has not met this burden.

If, after trial, Wells Fargo were to prove that Premier defaulted on the Mortgage, then the appointment of a receiver may be appropriate. However, it would be premature for the Court to grant Trustee's motion at this stage in the litigation. Moreover, Wells Fargo does not offer evidence indicating that Premier's financial status is so precarious as to endanger its interest in the collateral or to leave Trustee without an adequate remedy at law. According to Premier, the Hotel has not been scheduled for tax sale and value of the property is greater than the amount it owes under the Note (Matta Decl. at ¶¶ 5-8, 18).

Accordingly, the Court will deny Wells Fargo's motion to appoint a receiver without prejudice. Trustee may renew its motion on a finding of default after trial, or it may seek to join that issue with the trial on its foreclosure action and present evidence to establish the facts necessary for a receiver's appointment.

## VI. Conclusion

For the foregoing reasons, the Court will deny Wells Fargo's motions to appoint a receiver (Doc. 7) and for summary judgment (Doc. 19). Wells Fargo's motion to appoint a receiver will be denied without prejudice. A separate Order follows.

Robert D. Mariani
United States District Judge

19